IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

ANDREW J. KEHOE and        *
JOANNE KEHOE,              *
                           *
    PLAINTIFFS,            *
                           *
v.                         *    CASE NO: 3:06cv00425-MEF
                           *
MERCK & CO., INC., et al., *    On Removal from Circuit Court of
                           *    Russell County, Alabama
    DEFENDANTS.            *

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO REMAND**

COME NOW the Plaintiffs, Andrew J. Kehoe and Joanne Kehoe, and hereby submit their brief in support of their Motion to Remand. Defendant, Merck & Co., Inc., has failed to establish that this Court has jurisdiction over these proceeding, and, as a result, the Plaintiffs' Motion to Remand is due to be **GRANTED**, and this cause remanded back to the Circuit Court of Russell County, Alabama for the following reasons:

1. This Court lacks subject matter jurisdiction. The Plaintiffs and two of the named Defendants are citizens of Alabama. As such, complete diversity of jurisdiction is absent. Defendant Merck has failed to establish that Defendants Anne Brandon and Lamonde Russell ("Individual Resident Defendants") were fraudulently joined as parties to this cause to defeat federal jurisdiction. Defendant has failed to establish that there is "no possibility" that the Plaintiffs cannot prevail in state court against the Individual Resident Defendants. In fact, the allegations made against the Individual Resident Defendants are sufficiently pleaded under and supported by Alabama law. Further, the allegations set forth in Plaintiffs' state court complaint adequately set forth factual and

legal bases to support the claims against averred against the Individual Resident Defendants, and the stated allegations clearly indicate that the Individual Resident Defendants acted independently and in concert with Defendant Merck.  Joint and several liability and alternative liability, contrary to the confusing arguments of Defendant Merck, are well-recognized methods of pleading under Alabama law.

2.  Legg v. Wyeth does not support the conclusion that joinder of the Individual Resident Defendants was fraudulent.

3.  Defendant Merck's removal petition is defective because all Defendants have not joined in removal of this cause to federal court.

## I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

This product liability action arises from the injuries of Andrew J. Kehoe as a result of taking the prescription drug VIOXX® (rofecoxib), a prescription drug designed to treat pain through reduced inflammation.  As set forth in his state-court complaint, Mr. Kehoe was prescribed and used VIOXX® for 56 months and as a result suffered a heart attack on or about September 20, 2004.  The physician who prescribed VIOXX® to Andrew J. Kehoe has his office in Russell County, Alabama, and Andrew J. Kehoe had his prescription of the medication filled in that county.  Andrew J. Kehoe ingested the prescription medication VIOXX® and the damages and injuries resulting from Andrew J. Kehoe's use of the prescription medication VIOXX®  occurred in Russell County, Alabama (or in the neighboring Lee County, Alabama, where the Plaintiffs reside).  As a direct and proximate result of Andrew J. Kehoe consuming VIOXX®, he suffered injuries including a heart attack, physical pain and suffering, emotional distress, and other damages as set forth in more detail in the state-court complaint.

Defendant Merck, the Individual Resident Defendants, and/or the named fictitious defendants designed, manufactured, marketed, distributed, and/or sold VIOXX®, despite knowing that VIOXX® caused serious and potentially life-threatening side effects. The Defendants, jointly and severally, encouraged the use of VIOXX® through an aggressive marketing campaign, including through its sales representatives detailing physicians, and through direct-to-consumer advertising. The direct-to-consumer advertising included advertisements on television and in major magazines and newspapers as well as direct mail throughout Alabama. In addition, the Defendants misrepresented the effectiveness of VIOXX® and concealed the known and serious side effects from physicians and from the consuming public, including Andrew J. Kehoe. The Defendants knew of the defective and unreasonably dangerous nature of VIOXX®, yet continued to design, manufacture, and sell VIOXX® so as to maximize gross sales and profits in conscious disregard of the foreseeable harm to be caused by VIOXX®. Though the Defendants were aware that VIOXX® was unreasonably dangerous as designed, they failed to adequately test VIOXX® and failed to warn the public of the drug's dangerous propensities. The Individual Resident Defendants or the sales representatives who detailed the prescribing physician in this cause were informed of the drug's dangerous propensities, but participated in the scheme to suppress and withhold this information from physicians and the consuming public. The sales representatives, in concert with Defendant Merck, benefited by the suppression of this critical information by increasing the sales of the drug, which correspondingly increased commissions, bonuses and incentives earned from the sale of VIOXX®. The Defendants also failed to provide Mr. Kehoe with timely and adequate post-marketing warnings or instructions as additional

information became available to the Defendants about the risks posed to those who ingested or would ingest VIOXX®, including Andrew J. Kehoe.

Furthermore, Defendants failed to exercise ordinary care and was negligent in the manufacture, marketing, sale, and testing of VIOXX® as it placed the drug into the stream of commerce. Despite their knowledge that VIOXX® caused serious side effects, the Defendants continued to market VIOXX® to the public, including Mr. Kehoe, when there were safer, alternative methods of treatment available.

Defendant Merck also breached express and implied warranties made in relation to VIOXX®. Both before Mr. Kehoe was first prescribed VIOXX® and during the period in which he ingested VIOXX®, Defendant Merck expressly warranted and represented that VIOXX® was safe, and impliedly warranted that VIOXX was safe and fit for its intended, ordinary uses. The fact that Defendant Merck was providing false information to the public about VIOXX® was known or became known to the Individual Resident Defendants and other sales representatives of Defendant Merck through this country, and the company sales representatives became active participants in this mass cover-up of critical safety information. Mr. Kehoe and his prescribing physician reasonably relied upon the representations of the Defendants and relied upon the Defendants' superior knowledge as to the safety and fitness for the intended use of VIOXX®. Contrary to the warranties and representations of the Defendants, VIOXX® was not safe and could and did cause serious side effects and harm to those who took the drug, and accordingly was not fit for its intended, ordinary purpose. At the time the Defendants marketed, sold and distributed VIOXX® for use by Mr. Kehoe, the Defendants knew their representations about the safety of VIOXX® were false, or they

made those representations with reckless disregard for their falsity. The Defendants'
wrongful acts or omissions were a contributing or proximate cause of Mr. Kehoe's
injuries.

On April 3, 2006, the Plaintiffs filed suit in the Circuit Court of Russell County,
Alabama. Plaintiffs asserted various causes of action against the Defendants, including
product liability under the AEMLD, negligence, breach of express warranty, breach of
implied warranty, fraudulent suppression and concealment, fraudulent misrepresentation,
wrongful death, and loss of consortium.

On May 10, 2006, the Defendants filed a Notice of Removal with this Court.
Plaintiffs now urge this Court to remand this action to state court in accordance with 28
U.S.C. § 1447(c) and the authority referenced herein.

## II.    SUMMARY OF ARGUMENT

This case represents one of many attempts by Defendant Merck to "manufacture"
diversity jurisdiction, with total disregard for whether such jurisdiction actually exists.
Merck's contention that the Plaintiffs have named Individual Resident Defendants as a
tactic to attempt to defeat diversity is an affront to Plaintiffs' due process rights to seek
relief from those who are responsible for Mr. Kehoe's injuries in the forum of their
choosing.

This and other federal District Courts in the Eleventh Circuit have repeatedly
rejected the frivolous attempts by Defendant Merck to remove validly pleaded Vioxx
cases from state to federal court. See, e.g., Irvin v. Merck & Co., Inc., et al, Case No. 03-
80514-cv-Hurley (S.D. Fla. Oct. 9, 2003); Turner v. Merck & Co., Inc., et al, Case No.
2:05cv702-T (M.D. Ala. Sept. 21, 2005); Struthers v. Merck & Co., Inc., et al., Case No.

2:06cv127-MHT (M.D. Ala. March 13, 2006); <u>Leverett v. Merck & Co., Inc., et al.</u>, Case

No. 3:06cv128-MHT (M.D. Ala March 15, 2006).[1]    Judge Myron Thompson in his

remand orders in <u>Struthers</u> and <u>Leverett</u>, VIOXX®-related cases against the same

Defendants as here, recently wrote:

> This lawsuit, which was removed from state to federal court based on
> diversity-of-citizenship jurisdiction, 28 U.S.C. §§ 1332, 1441, is now
> before the court on plaintiff's motion to remand.  The Court agrees with
> plaintiff that this case should be remanded to state court.  First, there has
> not been <u>fraudulent joinder</u> of any resident defendant (that is, plaintiff has
> colorable claims against such a defendant), <u>see</u> <u>Coker v. Amoco Oil Co.</u>,
> 709 F.2d 1433, 1440 (11th Cir. 1983); <u>Cabalceta v. Standard Fruit Co.</u>, 883
> F.2d 1553, 1561 (11th Cir. 1989).  Second, there has not been <u>fraudulent
> misjoinder</u> of any resident defendant (that is, plaintiff has reasonably
> joined such a defendant with other defendants pursuant to Rule 20 of the
> Federal Rules of Civil Procedure), <u>see</u> <u>Tapscott v. MS Dealer Service
> Corp.</u>, 77 F.3d 1353, 1360 (11th Cir. 1996).

Judge Hurley, in his remand order in <u>Irvin</u>[2], likewise held the plaintiffs presented

colorable claims that, if proven, would subject the in-state, sales representative

defendants to liability.  These cases are indistinguishable from the present case.

The sole question before this Court is whether this action should be remanded as

having been improvidently removed.  Removal is improper where complete diversity of

citizenship is lacking.  In this case, the Plaintiffs and the Individual Resident Defendants,

as set forth in the state-court complaint, are residents of Alabama.  Thus, this Court

would not have had original jurisdiction had Plaintiffs chose to prosecute this action in

federal court.

---

[1] See Exhibit "A", attached and filed with this brief.  See also Exhibit "C" for other federal districts courts
which have ruled accordingly in Vioxx-related litigation.

[2] The <u>Irvin</u> case was removed from and remanded back to state court and resulted in the court charging
costs and attorneys' fees against Merck for its frivolous removals.  <u>Irvin v. Merck Co., Inc.</u> Case No. 03-
80514-cv-Hurley (S.D.Fla. Feb. 14, 2005).  See Exhibit "B" attached and filed with this brief.

Defendant Merck has wholly failed to establish that the Plaintiffs fraudulently joined the Individual Resident Defendants as a means to defeat diversity of citizenship. The Plaintiffs' Complaint alleges claims against all the Defendants that, if proven at trial, will sustain a jury verdict against all Defendants. As averred and as set forth in more detail herein, the Individual Resident Defendants were active participants in a scheme to mislead doctors and the consuming public about the dangers of the drug, VIOXX®. Pursuant to Alabama law, the Individual Resident Defendants can be found liable for their active participation in a fraudulent scheme in this state.

Further, the Individual Resident Defendants have not joined in Merck's removal petition and, as such, removal of this cause by Merck was inappropriate. The Individual Resident Defendants are necessary parties to a removal action. To the extent Defendant Merck seeks to escape a state court action because it contends that the Individual Resident Defendants are not the properly named sales representatives, this fact does not preclude remand to state court.

### III.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1447(c), after a case has been removed to federal district court but "at any time before final judgment," the plaintiff may move for remand, and "the case *shall* be remanded [if] it appears that the district court lacks subject matter jurisdiction." (Emphasis added.) It is well settled that federal courts are courts of limited jurisdiction and are "empowered to hear only cases within the judicial power established by Article III of the United States as authorized by Congress. See University of South Alabama v. American Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999) (quoting Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994)). Because the statutes governing removal

are jurisdictional, and because removal jurisdiction raises significant federalism concerns, removal statutes must be strictly construed in favor of state court jurisdiction and against removal.  See Shamrock Oil & Gas v. Sheets, 313 U.S. 100, 108-09, 61 S. Ct. 868 (1941); University of South Alabama, 168 F.3d at 411; Clay v. Brown & Williamson Tobacco Corp., 77 F. Supp. 2d 1220, 1221 (M.D. Ala. 1999) (DeMent, J.).

"An action is not properly removable if it consists of a non-separable controversy involving both resident and nonresident defendants." Coker v. Amoco Oil Co., Inc., 709 F.2d 1433, 1439 (11th Cir. 1983).  Thus, where a removing defendant asserts federal subject matter jurisdiction based on an amount in controversy over $75,000 and the diversity of citizenship of the parties, the defendant must show there is actually complete diversity; that is, every plaintiff must be diverse from every defendant.  Triggs v. John Crum Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998) (citing Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1355 (11th Cir. 1996)).

In an action based upon a removal petition and a motion to remand, the defendant, as the removing party, bears the burden of establishing federal subject matter jurisdiction. See Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1373 (11th Cir. 1998).  Because federal courts are courts of limited jurisdiction, all doubts about federal subject matter jurisdiction on removal should be resolved in favor of remand to state court, University of South Alabama, 168 F.3d at 411; Pacheco de Perez, 139 F.3d at 1373; Seroyer v. Pfizer, Inc., 991 F. Supp. 1308, 1312 (M.D. Ala. 1997); and all questions of fact and controlling law should be resolved in favor of the plaintiff, Shamrock Oil, 313 U.S. at 108-09; University of South Alabama, 168 F.3d at 411.  Accord Cope v. American Int'l Group, 2006 WL 317238 *1 (M.D. Ala. 2006) (Albritton, Senior J.) ("[T]he Eleventh

Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear.").

## IV.    ARGUMENT

### A.    Diversity jurisdiction does not exist.

Defendant Merck does not dispute that complete diversity is missing on the face of Plaintiffs' Complaint. Rather, Defendant Merck, in contravention of the settled law of this State, contends that the citizenship of the Individual Resident Defendants should be disregarded on the ground that they were fraudulently joined. Defendant Merck has failed to carry its burden on this issue and, thus, this cause is due to be remanded back to the Circuit Court of Russell County, Alabama.

### 1.    The standard for fraudulent joinder supports remand.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." Triggs, 154 F.3d at 1287. Arguments regarding fraudulent joinder fail if there is any possibility that a state court would find that the Complaint states a cause of action against a resident defendant. Id. at 1287. The removing party bears the burden of establishing fraudulent joinder. See Coker, 709 F.2d at 1440; see also, Pacheco de Perez, 139 F.3d at 1380; Cope at * 2. That burden is a heavy one. See Pacheco de Perez, 139 F.3d at 1380; Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997); B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (1981). To prove that a resident defendant has been fraudulently joined, the removing defendants must show either that "there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant in state court or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." Coker, 709 F.2d at 1440;

Pacheco de Perez, 139 F.3d at 1380; Crowe, 113 F.3d at 1538. See also Triggs v. John Crump Toyota, 154 F.3d 1284, 1287 (11th Cir. 1998)(setting forth three occasions when fraudulent joinder may exist).

"While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),' the jurisdictional inquiry 'must not subsume substantive determination.'" Crowe, 113 F.3d at 1538 (quoting B. Inc., 663 F.2d at 550)(citations omitted). "[T]he trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits." Id. (quoting B., Inc., 663 F.2d a 548-49). "When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Crowe, 113 F.3d at 1538. According to the Court in Crowe:

> In terms of this circuit's law, the main point for us is this one: For a plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved."

Id. at 1541-42 (quoting B., Inc., 663 F.2d at 550)(emphasis added).

Stated differently, "[i]n the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." Crowe, 113 F.3d at 1542. "Where there have been allegations of fraudulent joinder . . . the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that

10

possibility exists, a good faith assertion of such an expectancy in a state court is not a sham ... and is not fraudulent in fact or in law." B., Inc., 663 F.2d at 550 (quoting Bobby Jones Garden Apartments v. Suleski, 391 F.2d 172, 177 (5th Cir. 1968)).

## 2.    The resident defendants were not fraudulently joined.

Defendant Merck has made no claim that Plaintiffs fraudulently pleaded jurisdictional facts. Accordingly, this Court's inquiry is limited to determining whether there is a *possibility* that the state court might find, under Alabama law, that the Plaintiffs have asserted valid claims against any one of the resident defendants. See Triggs, 154 F.3d at 1287; Crowe, 113 F.3d at 1538. Where, as here, the Notice of Removal is filed before the Plaintiffs have had full opportunity to develop their claims against the Individual Resident Defendants through discovery, Alabama federal courts have assessed those claims in accordance with the standard of Fed. R. Civ. P. 11. See, Clay, 77 F. Supp. 2d at 1224 (De Ment, J.); see also Sellers v. Foremost Ins. Co., 924 F. Supp. 1116, 1118-19 (M.D. Ala. 1996) (Thompson, J.). "[T]o block a fraudulent-joinder charge based on lack of evidence, a plaintiff who has not been able to engage in full discovery must be able to provide some showing that her claim against the resident defendant has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Sellers, 924 F. Supp. at 1119. "[T]o block a fraudulent-joinder charge *based on lack of legal support*, a plaintiff need only show that her claim against a resident defendant is warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Id. at 1119 n. * (emphasis in original).

"If there is *a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court." Coker, 709 F.2d at 1440-41 (citing Davis v. GMC, 353 F. Supp.2d 1203, 1207 (M.D. Ala. 2005) (emphasis added). The Plaintiff is not required to have a winning case against a resident defendant, but only have a *possibility* of stating a valid cause of action in order to defeat arguments of fraudulent joinder. Triggs, 154 F.3d at 1287.

Defendant Merck relies upon rulings by other courts, including In re Rezulin Products Liability Litigation, 133 F. Supp. 2d 272 (S.D.N.Y. 2001); In re Baycol Products Litigation, MDL 1431, Order dated March 26, 2004; and Fowler v. Pharmacia & Upjohn et al., CV-04-OT-712-M, Order dated June 24, 2004,[3] for the general proposition that the Plaintiffs cannot sustain their claims against the Individual Resident Defendants. Defendant Merck's reliance on the rulings in these cases falls short because those courts applied a standard of "no reasonable basis" to determine whether the plaintiffs' claims against non-diverse defendants were sufficiently pleaded to avoid federal court jurisdiction. This standard is substantially different than the "no possibility" standard utilized by courts in the Eleventh Circuit. See Triggs, 154 F.3d at 1287 (citing Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1355 (11th Cir. 1996)).[4]

---

[3] The resident defendant in Fowler was not a sales representative but was an account manager for a separate corporate entity. The court applied New York and Minnesota law which varies significantly from Alabama law. The court in Fowler, at 30, was only partially persuaded by the reasoning in In re Rezulin and In re Baycol, stating, "those courts go further than this court would go in that they may exclude claims against even active, knowledgeable sales representatives."

[4] Defendant Merck throughout its removal petition wrongfully cites and relies upon the "no reasonable basis to predict" standard – a standard of review clearly inapplicable in the Eleventh Circuit.

Consequently, the holdings in In re Rezulin and In re Baycol cannot be relied upon to resolve the issues in this case.

The Plaintiffs have asserted valid claims under Alabama law against the Individual Resident Defendants.

**a.      The Plaintiffs have stated valid product liability (AEMLD) claims against the Individual Resident Defendants.**

To establish a prima facie case under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), a plaintiff must demonstrate that:

(1)     He suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

    (a)     the seller is engaged in the business of selling such a product, and

    (b)     it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2)     Showing the above elements, a plaintiff has proved a prima facie case although

    (a)     the seller has exercised all possible care in the preparation and sale of her product, and

    (b)     the user or consumer has not bought the product from, or entered into any contractual relation with, the seller.

See Casrell v. Altec Industries, Inc., 335 So. 2d 128, 132-33 (Ala. 1976); Atkins v. American Motors Corp., 335 So. 2d 134, 141 (Ala. 1976).

It is well settled under Alabama law that employees of a company may be held liable for their active participation in the torts of the company. "[O]fficers and employees of a corporation are liable for torts in which they have personally participated,

irrespective of whether they were acting in a corporate capacity." Ex parte Charles Bell Pontiac, 496 So. 2d at 775 (citing Candy H. v. Redemption Ranch, Inc., 563 F. Supp. 505, 513 (M.D. Ala. 1983)); see Clay v. Brown & Williamson Tobacco Corp., 77 F. Supp. 2d 1220, 1224 (M.D. Ala. 1999); see Seaborn v. R. J. Reynolds Tobacco Co., 1996 WL 943621 (M.D. Ala., Dec. 30, 1996) (NO. CIV. A. 96-T-1540-N).

In the case at bar, the Individual Resident Defendants aggressively marketed VIOXX® to healthcare professionals, including Mr. Kehoe's physician, by frequently calling on physicians, distributing samples to physicians to be given to patients, conducting educational seminars for physicians, and distributing sales literature to healthcare professionals and the consuming public. The Individual Resident Defendants, in communications with physicians, compared the efficacy of VIOXX® to other existing drugs, sought to distinguish VIOXX® from other drugs already on the market, and worked to persuade physicians to prescribe VIOXX® to their patients. The Individual Resident Defendants provided physicians with VIOXX® product information. Throughout these activities, the Individual Resident Defendants worked to increase the sales of VIOXX® and their own personal financial gain.

Defendant Merck and the Individual Resident Defendants had far superior knowledge of the efficacy and safety profile of VIOXX® over that of prescribing physicians and patients who took the drug. Andrew J. Kehoe and his prescribing physician detrimentally relied on information provided by the Individual Resident Defendants. The Individual Resident Defendants provided false, fraudulent, incorrect, misleading and/or incomplete information (such as inadequate warnings of risks of harm and adverse effects from the use of VIOXX®) to the prescribing physician, and the

14

prescriber passed this erroneous information on to his patients, including Mr. Kehoe. Mr. Kehoe relied on such information through the representations of his physician. If these allegations are proven to be true, a finding of individual liability under AEMLD against the Individual Resident Defendants is more than a mere "possibility."

In Clay and Seaborn, *supra*, this Court found that, to the extent a manufacturer defendant allegedly violated AEMLD, "it acted through its employees; the company does not employ ghosts." Clay, 77 F. Supp. 2d at 1224; Seaborn, 1996 WL 943621, at *3. The Court allowed the plaintiffs to pursue the distributors and employee sales representatives individually -- even in the absence of any personal contact with the plaintiffs -- and to substitute new individual defendants in the event plaintiffs had named the wrong individuals at the outset. Significantly, the Court noted that discovery might well establish that the individual in-state defendant might have had superior knowledge to others, which could establish his independent liability under the AEMLD.

Other United States District Courts have also consistently rejected arguments that in-state defendant sales representatives are fraudulently joined in the context of products liability actions, seeking damages as the result of a defective drug. See Barry Pace, et al. v Parke-Davis, No. 3:00-3046 (N.D. Ala. Nov. 21, 2000)(Johnson, J.); see also Donald McCaffery v. Warner-Lambert Co., et al., No. 4:00-2848 (N.D. Ala. Dec. 8, 2000) (Propst, J.); see also Acton v. R.J. Reynolds Tobacco Co., No. 96-C-2737-W (N.D. Ala. Oct. 23, 1996). And other United States District Courts have remanded cases to state courts or refused to stay other Vioxx-related, products-liability litigation in federal courts throughout this country. See, Landrum v. Merck & Co., Inc., et al., Case no. CV-05-01055-J (N.D. Ala. May 25, 2005) (holding that diversity jurisdiction was absent and

remanding to state court, relying upon Marshand v.Wyeth, et al., CV-03-CO-319-5-W (N.D. Ala. 2004)); Sokarda, et al. v. Merck & Co., Inc., et al., Case no. SACV-05-177-JFW (MANX) (C.D. Calif. April 22, 2005) (holding that under California law, case should be remanded to state court based upon properly named in-state defendant); Amisch v. Merck Co., Inc., et al., Case no. 04-CV-847-DRH (S.D. Ill. Dec. 22, 2004) (holding that motion to stay pending JPML's ruling on motion to transfer should be denied and that forum court should address subject matter jurisdiction, and remanding case to state court because defendant failed to meet its burden to sustain removal); Brame v. Merck & Co., Inc., et al., Case no. 05-034-GPM (S.D. Ill. Feb. 17, 2005) (holding that defendant failed to meet its burden to establish fraudulent joinder, refusing to stay proceedings pending ruling by JPML, and remanding case back to state court); McQuay v. Merck & Co., Inc., et al., Case No. 05-038-GPM (S.D. Ill. Feb. 17, 2005) (same); Tomlin v. Merck & Co., Inc., et al., Case no. 04-14335-CIV-Moore (S.D. Fla. Feb. 14, 2005) (holding that motion to stay pending JPML was inappropriate, holding that plaintiff adequately pleaded a claim against sales representative under Florida law, finding that there was no fraudulent joinder, and remanding the case back to state court).[5]

As Judge Ira DeMent wrote in Brown, 77 F. Supp. 2d at 1223, quoting de Perez, 139 F.3d at 1380-81 and Crowe, 113 F.3d at 1538, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." The question of whether drug sales representatives can be held liable under the AEMLD is "arguable under state law." As a result, the Plaintiffs have stated "possible" viable claims against the Individual Resident Defendants.

---

[5] See Exhibit "C", attached and filed with this Brief.

**b. The Plaintiffs have alleged valid claims of fraud, fraudulent misrepresentation, fraudulent suppression and concealment against the Individual Resident Defendants.**

Under Alabama law, in order to state a claim for fraud and fraudulent misrepresentation, a plaintiff must show that the defendant made a misrepresentation of material fact, that he made it willfully to deceive, recklessly, without knowledge, or mistakenly, that the misrepresentation was justifiably relied on by the plaintiff under the circumstances, and that the misrepresentation caused damage as a proximate consequence. Ala. Code § 6-5-101 (1975); Harrington v. Johnson-Rast & Hays Co., 577 So.2d 437 (Ala.1991). In the case at bar, Plaintiffs allege that Defendant Merck and the Individual Resident Defendants, together or separately, negligently, recklessly, intentionally and fraudulently made material misrepresentations that VIOXX® was safe. The Individual Resident Defendants did so with the intent to induce physicians to prescribe and for consumers, including Mr. Kehoe, to purchase VIOXX®. Moreover, Plaintiffs allege that, at the time the Defendants made these representations, the Defendants were aware of the falsity of these representations and/or made these representations with reckless disregard to the truth. Plaintiffs also allege that Andrew J. Kehoe and his prescribing physician detrimentally relied upon the material misrepresentations and suppressions of the Defendants and, as a result, Andrew J. Kehoe suffered injuries.

Defendant Merck asserts in its Notice of Removal that claims of fraud cannot be maintained against the Individual Resident Defendants. In so arguing, Defendant Merck suggests that the Individual Resident Defendants made no representations to Mr. Kehoe. However, it "is not always necessary to prove that a misrepresentation was made directly

to the person who claims to have been injured." Bloodsworth, 2005 WL at *11 (quoting

Thomas v. Halstead, 605 So. 2d 1181, 1184 (Ala. 1992)). "If a third person is injured by

the deceit, he may recover against the one who made possible the damages to him by

practicing the deceit in the first place." Id. at *11 (quoting Thomas, 605 So. 2d at 1184).

It is well settled in Alabama law that "there is a duty not to make a false representation to

those to whom a defendant intends, for his own purposes, to reach and influence by the

representation." Id. at *11 (quoting Wheelan v. Sessions, 50 F. Supp. 2d 1168, 1174

(M.D. Ala. 1999) (DeMent, J.); see Colonial Bank of Ala. v. Ridley & Schweigert, 551

So. 2d 390, 396 (Ala. 1989); see also Brasher v. Sandoz Pharmaceuticals Corp., 2001

U.S. Dist. Lexis 18364, at *31 - *33 (N.D. Ala. Sept. 21, 2001) (wherein the Court found

that the plaintiffs "clearly were the parties who were injured by the alleged fraud. It also

was clear that the drug manufacturer 'for its own purposes of promoting its product and

making a profit, intended to reach and influence the patients of obstetricians, such as the

plaintiffs.'") Thus, Defendant Merck's position that Plaintiffs have no claim against the

Individual Resident Defendants because those Defendants made no representations

directly to Andrew J. Kehoe is without merit.

Furthermore, United States District Courts in Alabama have repeatedly rejected

similar fraudulent joinder claims in the context of fraudulent misrepresentation and

suppression claims against pharmaceutical sales representatives and have remanded these

cases to state court. See Floyd v. Wyeth, No. 03-C-2564-M (N.D. Ala. Oct. 20, 2003)

(Clemon, J.); Crittenden v. Wyeth, No. 03-T-920-N (M.D. Ala. Nov. 21, 2003)

(Thompson, J.); Terrell v. Wyeth, No. CV-03-BE-2876-S (N.D. Ala. Dec. 12, 2003)

(Bowdre, J.) ("Although the plaintiffs' claims against defendant Parker appear to raise

novel questions of Alabama state law, this court will not speculate that the plaintiffs have *no* possibility of establishing a cause of action against this non-diverse defendant. Little, if any, discovery has been done to-date in this case; thus, it would be premature for this court to make rash decisions regarding the nature and the timing of the injury sustained by the plaintiffs, or the employment history of defendant Parker. Nor can the court conclusively determine that plaintiffs would not be successful in urging its various theories under Alabama law."); Ballard v. Wyeth, No. 03-T-1255-N (N.D. Ala. Jan. 23, 2004) (Thompson, J.); Brunson v. Wyeth, No. 03-T-1167-S (N.D. Ala. Jan. 23, 2004) (Thompson, J.); Blair v. Wyeth, No. 03-T-1251-S (N.D. Ala. Jan. 23, 2004) (Thompson, J.); Storey v. Wyeth, No. CV-04-BE-27-E (N.D. Ala. Jan. 30, 2004) (Bowdre, J.); Cash v. Wyeth, No. 03-RRA-3378-E (N.D. Ala. Feb. 3, 2004) (Armstrong, Mag. J.); Marshal v. Wyeth, No. CV-04-TMP-179-S (N.D. Ala. Feb. 18, 2004) (Putnam, Mag. J.); McGowan v. Wyeth, No. CV-04-TMP-298-S (N.D. Ala. Feb. 24, 2004) (Putnam, Mag. J.); Johnson v. Wyeth, No. CV-04-TMP-224-S (N.D. Ala. Feb. 23, 2004) (Putnam, Mag. J.); Bradford v. Wyeth, No. 03-P-3157-5 (N.D. Ala. Feb. 27, 2004) (Proctor, J.); Smith v. Wyeth, No. 04-P-226-M (N.D. Ala. Feb. 27, 2004) (Proctor, J.); Boudreaux v. Wyeth, No. CV-04-P-227-M (N.D. Ala. Feb. 27, 2004) (Proctor, J.); Bridges v. Wyeth, No. 04-AR-0297-J (N.D. Ala. Mar. 2, 2004) (Acker, J.); Hough v. Wyeth, No. 04-H-393-S (N.D. Ala. Mar. 5, 2004) (Hancock, J.); Brogden v. Wyeth, No. 04-T-068-S (M.D. Ala. Mar. 8, 2004) (Thompson, J.); Reeder v. Wyeth, No. 04-T-066-N (M.D. Ala. Mar. 8, 2004) (Thompson, J.); Eaton v. Wyeth, No. CV-04-P-380-M (N.D. Ala. Mar. 9, 2004) (Proctor, J.); Allen v. Wyeth, No. 04-CV-0238-T (M.D. Ala. Apr. 9, 2004) (Thompson, J.); Chestnut v. Wyeth, No. 04-CV-0295-T (M.D. Ala. May 3, 2004) (Thompson, J.); King v. Wyeth, No. 04-

CV-0409-T (M.D. Ala. May 24, 2004) (Thompson, J.); <u>Culpepper v. Wyeth</u>, No. 04-CV-0411-T (M.D. Ala. May 24, 2004) (Thompson, J.); <u>Braden v. Wyeth</u>, No. 04-CV-0384-T (M.D. Ala. May 24, 2004) (Thompson, J.); <u>Cross v. Wyeth</u>, No. 03-0882-BH-M (S.D. Ala. Mar. 29, 2004) (Hand, J.); <u>Bennett v. Wyeth</u>, No. 04-CV-0416-T (M.D. Ala. June 2, 2004) (Thompson, J.).[6]

Federal District Courts in Alabama have rightly found that plaintiffs who allege claims of fraudulent misrepresentation and suppression against sales representatives of drug companies have alleged valid claims under Alabama law.    Accordingly, the Individual Resident Defendants were not fraudulently joined in this case.

**c.    The Plaintiffs' complaint was pleaded with sufficient particularity to support claims against the Individual Resident Defendants.**

Defendant Merck also asserts that Plaintiffs failed to plead their claim of fraudulent misrepresentation with particularity.[7]  However, in their Complaint, Plaintiffs sufficiently allege that the Individual Resident Defendants fraudulently misrepresented and/or suppressed material information regarding the safety and efficacy of VIOXX and its harmful side effects in order to induce physicians to prescribe these drugs and to induce consumers, including Mr. Kehoe, to purchase VIOXX®.  Plaintiffs further allege that the Individual Resident Defendants misrepresented and/or suppressed the fact that VIOXX® was not safe and that the Defendants were under a duty to communicate this information to Plaintiffs, that the Individual Resident Defendants marketed, sold,

---

[6] See Exhibit "D," attached and filed with this brief.

[7] Comically, perhaps, Defendant Merck contends that the Plaintiffs seem to be confused about whether the sales representatives committed independent wrongful acts. As the court can clearly see from the sampling of evidence proferred in the complaint and in this pleading, the sales representatives acted both in conjuction with and independent of their employer, Merck.  Apparently, Defendant Merck does not understand the concepts of joint and several liability or the availability of alternative pleading under Alabama law.

supplied and/or otherwise distributed VIOXX®, that VIOXX® was defective and unreasonably dangerous as designed, was unreasonably dangerous due to inadequate testing, and was defective as marketed due to inadequate warnings or instructions, that the Defendants failed to warn Mr. Kehoe of the dangers of VIOXX® therapy, that the Defendants failed to provide post-marketing warnings to Mr. Kehoe after he began to take the drug, and that as a direct and proximate result of the Defendants placing VIOXX® on the market and Mr. Kehoe's ingestion of VIOXX®, Mr. Kehoe suffered injuries including heart attack. These allegations are sufficient to support the claims asserted by Plaintiffs in their Complaint; likewise, the claims are pleaded with sufficient particularity to support Plaintiffs' fraud claims against the Defendants, including the Indivdual Resident Defendants.

Further, Plaintiffs attached as exhibits to their Complaint sales brochures and sales training materials utilized by Merck sales representatives, including the Resident Defendants, to market, distribute, and sell VIOXX® to physicians, with the ultimate goal of patients, including Mr. Kehoe, ingesting VIOXX® for treatment of pain. Those sales materials are more than sufficient evidence to support Plaintiffs' claims against the Individual Resident Defendants. (See discussion, *infra*, relative to Legg v. Wyeth and the exhibits attached hereto for additional evidence of the corporate sales representatives' knowledge of and active participation in the fraudulent scheme of Defendant Merck.)

To the extent the Court finds Plaintiffs' Complaint deficient to satisfy the heightened pleading requirements, such a finding should not lead this Court to an automatic finding of fraudulent joinder. See Bloodsworth, 2005 WL at *11 (citing Duffin v. Honeywell Intern., Inc., 312 F. Supp. 2nd 869, 870 (N.D. Miss. 2004) ("a

plaintiff should ordinarily be given an opportunity to amend their complaint to allege fraud with greater particularity, before such claims are dismissed with prejudice upon a finding of fraudulent joinder") (citing Hart v. Bayer Corp., 199 F.3d 239, 248 n. 6 (5th Cir. 2000)). Defendant Merck contends that the Individual Resident Defendants had no direct contact with the prescribing physician or with the Plaintiff and, as such, their identities and residencies should be disregarded for purposes of determining federal jurisdiction. Merck should not be permitted to hide behind its non-disclosure of those sales representatives who actually detailed Andrew J. Kehoe's prescribing physician. Discovery to be conducted in the state court proceeding should flush out the true culprits, and the Plaintiffs can then proceed to amend their complaint to include the names of the individual, in-state defendants.

**B. Legg v. Wyeth is not controlling or dispositive of the issues in this matter.**

Defendant Merck refers to the recent decision of the United States Court of Appeals for the Eleventh Circuit, Legg v. Wyeth, 428 F.3d 1317 (11th Cir. 2005), and argues that the decision supports a denial of the Plaintiff's motion to remand. The Defendant's argument in this respect must fail.

**1. Legg v. Wyeth is not controlling on the issue of subject matter jurisdiction and any language in Legg relative to the remand proceedings is dictum.**

In Legg, the issue before the appellate court was whether the district court abused its discretion by awarding attorney's fees and costs to the plaintiffs as a result of the removal petition filed by the defendant, a drug company manufacturer, Wyeth. Contrary to the position urged by Defendant Merck in the present cause, the issue was not whether the district court abused its discretion by remanding the case, after finding that the

defendant failed to meet its burden of establishing fraudulent joinder. Indeed, the Eleventh Circuit noted that "28 U.S.C. § 1447 (d) bars our review of a remand such as this one based upon the lack of subject matter jurisdiction," but "the statute does not 'exclude the district court's assessment of costs from appellate review.'" Legg, 428 F.3d at 1319-20 (quoting Fowler v. Safeco Ins. Co., 915 F.2d 616, 617 (11th Cir. 1990)). The Court in Legg did not state that the trial court's remand order was in error, nor did the Court rule that the standard of review in such cases should be changed.

Since the language of Legg relied upon by Defendant Merck is not essential to the issue in that case, it is merely dictum and should not be given *stare decisis* effect by this Court. Nevertheless, assuming *arguendo* that this Court should defer to Legg on this issue, the Legg court's holding is in contravention of well-settled Alabama law, which provides that misrepresentations of material fact, even if made by mistake or innocently, constitute legal fraud. See Ala. Code § 6-5-101 (1975). See also Thomas v. Halstead, 605 So.2d 1181 (Ala. 1993). As discussed above, Alabama law is well-established that individual employees can be held liable for torts in which they participate.

The Court in Legg cites Fisher v. Comer Plantation, 772 So. 2d 455, 463 (Ala. 2000) for the proposition that "mere conduits" cannot be held liable for participating in a tort unless bad faith can be shown. Fisher, however, dealt with independent contractors. The sales representatives here were not "mere conduits" of information, but were instead an integral part of the false and fraudulent marketing and selling of VIOXX®.

Since the Eleventh Circuit did not have within its jurisdiction the ability to address the merits of the remand order in Legg, any discussion of the merits of the district court's order remanding the case back to state court is dictum and has no legal,

precedential value.  As a result, this Court should disregard that aspect of the Legg decision.

**2.  Even if the Eleventh Circuit's substantive discussion of removal and remand proceedings in Legg v. Wyeth should be considered, the "evidence" before the Court in this cause is more than sufficient to establish that there is a "possibility" of recovery against the Individual Resident Defendants.**

In reaching its decision that the district court erred by awarding attorney's fees and costs to the plaintiff in Legg, the Eleventh Circuit considered the fact before it that the defendant submitted uncontested affidavits of the sales representatives to establish that they were not active participants in the alleged wrongdoing as set forth in the complaint.  The defendant, Wyeth, in arguing that it had wrongfully been ordered to pay attorney's fees, argued that the sales representatives were named in the plaintiff's complaint as a means of fraudulent joinder to defeat federal diversity jurisdiction.  Wyeth submitted affidavits of the three named sales representatives to establish that they did not have prior knowledge of the subject drug's propensity to increase the risk of valvular heart disease.  The plaintiffs responded to this contention by pointing to sales materials and other documents to support its claims.  The appellate court observed, however, that the sales training materials did "not contain any warning to the sales representatives that Redux may cause valvular heart disease."  Legg at 1322.  As the court noted, the absence of such warnings reinforced the claims of the sales representatives made by them in their affidavits.

The Eleventh Circuit, in determining that Wyeth's removal efforts were "reasonable," a basis to determine whether the attorney's fees were wrongfully awarded,

appeared to be critical of the lower court's remand order, because there did not appear to be any refutation of the affidavits of the sales representatives, other than the allegations in the complaint. Such is not the case here.

In the Declarations of the Individual Resident Defendants, submitted by Defendant Merck in this case, the Defendants contend in conclusory and self-serving fashion that they were not active participants in the wrongdoing alleged by the Plaintiffs in their complaint. However, it is not the Individual Resident Defendant's contentions that bear the most attention; rather, it is the absence of a critical contention that they do not make which should be the focus of this Court's attention. Nowhere in the Declarations is it ever asserted that they lacked specific knowledge about the dangerous propensities of Vioxx, particularly with respect to the increased risk of cardiovascular and cerebrovascular events, prior to the time the drug was prescribed by Andrew J. Kehoe's physician. Such a baseless allegation by the Individual Resident Defendants would amount to perjury, based upon the known evidence in the national VIOXX® litigation, some of which was averred and submitted in and with the Complaint.

As set forth in the Complaint, Defendant Merck went through great lengths to hide the increased cardiovascular risks associated with VIOXX®. These efforts were accomplished primarily by the company teaching its sales representatives to suppress material facts and information about the dangerous aspects of the drug from physicians who commonly prescribed the drug to others, including Andrew J. Kehoe. Part of that process involved the infamous "Dodge Ball" training, where sales representatives were told to dodge or avoid the questions of suspecting physicians. Questions from physicians became known as "Obstacles" to the sales of the drug, Vioxx -- sales which were used to

determine sales representatives' commissions. Some of the "Obstacles" specifically identified the cardiovascular risk issues to the sales representatives. One such "Obstacle" provided: "'I am concerned about the cardiovascular effects of Vioxx?'" Another provided: "The competition has been in my office telling me that the incidence of heart attacks is greater with Vioxx than Celebrex."[8]

In response to these perceived "Obstacles," or questions from physicians, the sales representatives were trained to respond in a fashion to downplay or suppress the seriousness of the cardiovascular risks associated with Defendant Merck's blockbuster drug, VIOXX®. For example, Defendant Merck designed "Obstacle Responses" to be used by its sales representatives in responding to these very important inquiries.[9] In response to an inquiry that a physician might make about the potential for Vioxx increasing the risk of cardiovascular events, the sales representatives were taught to respond:

> "Doctor, once daily VIOXX® has no effect on platelet aggregation, and therefore would not be expected to demonstrate reductions in MI or other CV events. Agents such as low-dose aspirin are routinely prescribed for CV patients for their effect on the inhibition of platelet aggregation. Therefore, once daily VIOXX® is not a substitute for aspirin for cardiovascular prophylaxis...."

The training materials then direct the sales representatives to "[t]ransition back" to other benefits of the drug, no doubt as a way to avoid further questions. This response, as clearly indicated, in no wise addresses the CV risks associated with VIOXX®.

---

[8] Though part of Exhibit "A" to the Complaint, these specific "Obstacles" are reattached to this brief as Exhibit "E."

[9] These Obstacle Responses are attached as Exhibits "B" and "C" to the Complaint. The specific responses noted herein are reattached to this brief as "Exhibit "F."

More compelling, if a physician inquired about the comparison of the safety profile between VIOXX® and Celebrex®, a competing COX-2 drug, the sales representatives were taught to respond:

> "Doctor, there are no head-to-head studies comparing the cardiovascular profile of the two drugs. As a result, you cannot compare the drugs and conclude that one drug had fewer events than the other. What you may be referring to is press reports of the incidence rates in two separate studies. In the VIOXX® GI Outcomes Trial (VIGOR), the incidence of MI was 0.4% with VIOXX® and 0.1% with naproxen. Upon further analysis, four percent of patients in the VIOXX® GI Outcomes Study had experienced a cardiac event such as a heart attack or stroke before entering the study and thus met the established criteria for the use of aspirin for secondary CV prophylaxis. In the remaining 96% of patients for whom aspirin was not indicated for secondary CV prophylaxis, the incidence of MI was lower – 0.2% for VIOXX® and 0.1% for naproxen. The difference was not statistically significant.
>
> "…..
>
> "If needed, continue to address the physicians concerns with the cardiovascular effects of VIOXX® by guiding them through the Cardiovascular Card[10] …."

The training materials went on to again encourage the sales representative to "[t]ransition back" to the benefits of the drug, while downplaying the CV risks. Most disconcerting, however, is that the information about VIGOR was totally and completely false. Instead of being a 4 to 1 ratio of heart attacks, comparing Vioxx to naproxen, the rate in VIGOR was actually 5 to 1, a significant fact that was suppressed by Defendant Merck from physicians. Had the full truth been told to doctors, i.e., that there is a 500 times increased risk of heart attacks and strokes for patients on VIOXX® as compared to naproxen,

---

[10] The Cardiovascular Card itself was filled with omissions and inaccurate information, and was designed not to disclose the CV risks, but to address the GI benefits of the drug. The sales representatives were also not told to inform the physicians that the aspirin-indicated patients were excluded from VIGOR as a way to skew the results of that study. If at-risk patients, such as were in the 4% aspirin-indicated group, were included in the study, it is widely agreed the severity of the cardiovascular risks borne out of VIGOR would have been much more pronounced.

doctors would have been much less likely to accept the lie told by Defendant Merck that the explanation for the VIGOR results was that naproxen is cardioprotective.

Moreover, sales representatives were instructed by Defendant Merck to avoid discussing VIGOR with physicians. Routinely, Defendant Merck would submit Bulletins to its sales force, telling them what they could and could not discuss with physicians. In one such "Bulletin for VIOXX®", the sales representatives were directed: **"DO NOT INITIATE DISCUSSIONS ON THE FDA ARTHRITIS ADVISORY COMMITTEE (ADIVSORY COMMITTEE) REVIEW OR THE RESULTS OF THE VIOXX® GI OUTCOMES RESEARCH (VIGOR) STUDY. YOU MAY RESPOND TO CUSTOMER INQUIRIES ONLY AS OUTLINED BELOW."** The Bulletin goes on to direct the sales representatives to "Stay Focused on Efficacy," and encourages the sales representatives to direct the physician's attentions away from the dangers of the drug and get them focused back on the drug's efficacy.[11] This document establishes that there is more than a mere possibility that the sales representatives were active participants in providing misinformation to physicians, in suppressing the known dangers of the drug, and in encouraging physicians to sell a dangerous and deadly product, namely, VIOXX®. This document also debunks a concern of the Legg court -- the sales representatives in the present case were clearly knowledgeable of the known dangers and had greater knowledge than the physicians who were prescribing the drug. See also Clay, 77 F. Supp. 2d at 1224 ("[T]he court finds that some of the moving

---

[11] Though part of Exhibit "E" to the Complaint, this specific Bulletin is reattached to this Brief as Exhibit "G".

Defendants' employees are likely to hold some superior knowledge regarding the nature of [the alleged defective product].").[12]

To cover all of the examples of the sales representatives being part of the scheme would take hundreds of pages of briefing.  Suffice it to say, as it relates to the issue before the Court, the focus is whether the sales representatives, such as Lamonde Russell and Anne Brandon, knew or had reason to know of the cardiovascular risks associated with VIOXX® and whether there is a reasonable "possibility" that the Plaintifs can prove their claims that they are liable under Alabama law.  As set forth in more detail above, Lamond Russell and Anne Brandon are liable for their active roles in promoting, selling, and distributing a dangerous product, VIOXX®.  As a result, they were not fraudulently joined, and this cause is due to be remanded back to state court.

**C.    Defendant Merck has failed to obtain consent of all Defendants which further warrants remand of this cause.**

Defendant Merck concedes in its Notice of Removal that it has not obtained the consent of the Individual Resident Defendants, and Defendant Merck contends that their consent to removal is not necessary because they were fraudulently joined to this action.[13] This argument is meritless.

---

[12] Defendant Merck cites Bloodsworth v. Smith & Nephew, 2005 WL 3470337 (M.D. Ala., Dec. 19, 2005), for the proposition that Plaintiffs cannot show that the Individual Resident Defendants were personally involved in the wrongful acts herein.  In Bloodsworth, the Court relied upon the in-state sales representative's declaration which provided that he was unaware of any defect in the product, and that he only took orders and delivered the products to physicians in the original sealed packages. Id. at *7.  This case is not controlling here, because, as discussed, the Merck sales representatives were clearly aware of the drugs dangerous properties and acted in concert with their employer to suppress and conceal the known dangers.

[13] The Individual Resident Defendants, Anne Brandon and Lamonde Russell, filed Motions to Dismiss.  In their motions, they contend they were fraudulently joined and "incorporate[] the legal arguments, citations, and exhibits in Merck & Co., Inc.'s Notice of Removal dated May 10, 2006." Their motions acknowledge that the removal action is that of Defendant Merck.

"The law is clear that under 28 U.S.C. § 1446(a) removal procedure requires that <u>all</u> defendants join in the removal petition."[14]  <u>See, e.g.</u>, <u>Chicago, R.I. & P.R. Co. v. Martin</u>, 178 U.S. 245, 247-248, 20 S.Ct. 854, 855, 44 L.Ed. 1055 (1900); <u>Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants Local 349</u>, 427 F.2d 325, 327 (5th Cir.1970) (citing <u>Martin</u>); <u>Adams v. Aero Servs. Int'l, Inc.</u>, 657 F.Supp. 519, 521 (E.D.Va.1987); <u>P.P. Farmers' Elevator Co. v. Farmers Mut. Inc. Co.</u>, 395 F.2d 546 n. 2 (7th Cir.1968) (citing <u>Martin</u>); <u>In re Federal Savings & Loan Insurance Corp.</u>, 837 F.2d 432, 434, n. 1 (11th Cir.1988).  As a matter of law, where there are multiple defendants in a lawsuit, the case may be removed only if all defendants consent to the removal.  <u>Jerrell v. Kardoes Rubber Co., Inc.</u>, 348 F.Supp.2d 1278, 1282 (M.D. Ala. 2004).  Consent may not be implied, but rather, it must be express.  <u>Newman v. Spectrum Stores, Inc.</u>, 109 F.Supp.2d 1346 (M.D. Ala. 2000).

There are well-recognized exceptions to this rule.  A defendant need not join in if: (1) it is merely a nominal or formal party defendant, <u>Tri-Cities Newspapers</u>, 427 F.2d at 327; (2) it had not been served with process at the time the removal notice was filed, <u>Katz v. Costa Armatori</u>, S.p.A., 718 F.Supp. 1508, 1509 (S.D.Fla.1989); <u>Getty Oil Corp., a Div. of Texaco, Inc. v. Insurance Co. of North America</u>, 841 F.2d 1254, 1262 (5th Cir.1988); or (3) the removed claim is a separate and independent claim under 28 U.S.C. § 1441(c), <u>Alexander By Alexander v. Goldome Credit Corp.</u>, 772 F.Supp. 1217, 1222 (M.D.Ala.1991).

Defendant Merck does not assert one of the above exceptions to the "unanimity rule," but instead contends that the Individual Resident Defendants need not join in the removal action because they were fraudulently joined.  While the court in <u>Clay</u>, 77 F.

---

[14] No exceptions to this rule are laid out in 28 U.S.C. § 1446, nor elsewhere in federal statutory law.

Supp. 2d at 1223 n. 3, indicated that a fraudulently joined defendant may not be required to join in the removal petition, the court found that the resident defendants were not fraudulently joined (which meant that they were required to join in the removal), and the court remanded the case back to state court. A federal court may not ignore the fact that the resident defendants have failed to join in the removal action, simply because a defendant seeking removal contends that the resident defendants were fraudulently joined. Taking allegations of fraudulent joinder at face value, without first requiring the removing party to meet its burden on this issue, would essentially eviscerate the unanimity provision of 28 U.S.C. § 1446(a). Consideration of such matters must, by precedence, be viewed in the light most favorable to the Plaintiffs, who have the Constitutionally-supported right to proceed with their case in the forum of their choosing, especially where, as here, the federal court lacks jurisdiction.

Defendant Merck's removal is improper because it has failed to obtain the express consent of the properly joined Individual Resident Defendants, and, therefore, this cause is due to be remanded to state court.

## V.     CONCLUSION

In all of its efforts, Defendant Merck has failed to cite any directly applicable or controlling authority and consequently it has failed in its burden of proving that there is no possibility that Plaintiffs can establish a cause of action against the Resident Defendants Anne Brandon and Lamonde Russell. For the reasons outlined above, this Court lacks subject matter jurisdiction. Therefore, Plaintiffs respectfully urge the Court to remand this action in its entirety to the Circuit Court of Russell County, Alabama.

Respectfully submitted this 23rd day of May, 2006.

   /s/ J. Paul Sizemore
**ANDY D. BIRCHFIELD, JR. (BIR006)**
**J. PAUL SIZEMORE (SIZ 004)**
**BENJAMIN L. LOCKLAR (LOC009)**
**W. ROGER SMITH, III (SMI257)**
**Attorneys for Plaintiff**

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW, METHVIN,**
  **PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone:  (334) 269-2343
Fax:  (334) 223-1236

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document upon the

parties as listed below by placing a copy of same in the United States Mail, first class,

postage prepaid on this the 23rd day of May, 2006.

Alan T. Hargrove, Jr.
Mike Brock
F. Chadwick Morriss
**RUSHTON, STAKELY, JOHNSTON**
  **& GARRETT, P.A.**
Post Office Box 270
Montgomery, Alabama  36101-0270

   /s/ J. Paul Sizemore
**OF COUNSEL**