THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW J. KEHOE and | * | |
| JOANNE KEHOE, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | CV-06-425-MEF |
| | * | |
| MERCK & CO., INC., a foreign Corporation; | * | Removed from the |
| ANNE BRANDON, an Individual; LAMONDE | * | Circuit Court of |
| RUSSELL, an Individual; and fictitious | * | Russell County, AL |
| defendants A, B, C & D, being those persons, | * | (CV-06-126) |
| firms or Corporations whose fraud, scheme to | * | |
| defraud, and/or other wrongful conduct | * | |
| caused or contributed to the Plaintiffs' | * | |
| injuries and damages, and whose true names | * | |
| and identities are presently unknown to | * | |
| Plaintiff, but will be substituted by amendment | * | |
| when ascertained, | * | |
| | * | |
| Defendants. | * | |

**DEFENDANT MERCK & CO., INC.'S OPPOSITION
TO PLAINTIFFS' MOTION TO REMAND**

Plaintiffs have sought to evade federal jurisdiction by joining their product liability claims against Merck & Co., Inc. ("Merck") – which meet all of the requirements for federal diversity jurisdiction – with claims against two non-diverse Merck employees against whom they have no valid cause of action under Alabama law.  Plaintiffs also ask this Court needlessly to expend its judicial resources in addressing issues that should and will be decided by the Vioxx® MDL court.  As set forth below and in Merck's prior Motion to Stay

1

(Doc. 6), the Court should defer consideration of Plaintiffs' Motion For Remand (Doc. 9) pending MDL transfer.  Should the Court choose to consider Plaintiffs' Motion for Remand rather than staying the case, however, the Court should deny the motion because the non-diverse defendants are fraudulently joined.

## BACKGROUND

This lawsuit concerns Plaintiff Andrew Kehoe's use of the prescription medication Vioxx® ("Vioxx"), a pharmaceutical manufactured, marketed, and distributed by Merck.  In an attempt to defeat diversity jurisdiction, Plaintiffs named as defendants two individual Merck employees, Ann Brandon and Lamonde Russell (the "Employee Defendants").  Plaintiffs allege that the Employee Defendants are residents of the State of Alabama, and thus, non-diverse.

On May 10, 2006, Merck timely removed this case to federal court (Doc. 1) based upon federal diversity jurisdiction and moved for a stay (Doc. 6) of all proceedings pending MDL transfer.  Removal was appropriate because there is complete diversity of citizenship between the Plaintiffs and Merck; the only non-diverse defendants were fraudulently joined; and the amount in controversy satisfies the jurisdictional minimum.  *See* 28 U.S.C. § 1332.

## ARGUMENT

As a threshold matter, the Court should simply defer ruling on plaintiffs' remand motion pending MDL transfer.  This is the course recommended by the MDL panel and the Vioxx MDL judge and taken by federal courts around the country that have stayed more than 300 Vioxx cases in which plaintiffs sought remand (many involving the joinder of sales representatives).  If the Court does consider the merits of plaintiffs' motion, however, it should be denied.

**I.    The Court Should Refrain From Ruling On Plaintiffs' Motion For Remand And Should Stay All Proceedings In This Case.**

Both the MDL Panel and Judge Fallon, who is presiding over the Vioxx MDL proceeding in the Eastern District of Louisiana, have expressed their preference that overlapping remand motions be presented to the MDL court for coordinated treatment. As Judge Fallon explained:

> There are various issues of remand in various cases throughout the country. Again, a significant advantage of the MDL concept is some consistency. The Rule of Law is really based on consistency. If different decisions are made by numerous judges, then you have no consistency and no predictability. . . . It's easier if one court decides some of these matters than if 50 or 100 courts decide the matter.
>
> I'm conscious of dealing with the remand [motions] as quickly as possible, but I do want to get them all together . . . and deal with that issue in a consistent and fair fashion.

[Tr. of Status Conference Before the Hon. Eldon E. Fallon, at 21, *In re VIOXX Prods. Liab. Litig.*, MDL No. 1657 (June 23, 2005) (**Exhibit A**). *See also* Letter dated Mar. 21, 2005, from JPML to Hon. Ricardo H. Hinojosa (**Exhibit B**) ("wait[ing] until the Panel has decided the transfer issue . . . may be especially appropriate if the [remand] motion raises questions likely to arise in other actions in the transferee court and, in the interest of uniformity, might best be decided there if the Panel orders centralization")].

Judge Fallon's concerns are consistent with the majority view – *i.e.*, that the best way to ensure that MDL proceedings can achieve their statutory goal of efficient, coordinated proceedings is by staying litigation pending transfer to the MDL court, including the consideration of remand motions. This is particularly true where, as here, the issues raised by Plaintiffs' remand motion are similar to those raised in other cases likely to be transferred to the same MDL proceeding. For this reason, ***more than 1,700 Vioxx-related cases have***

***been stayed, including more than 300 in which plaintiffs sought remand.***    See also *Woods v. Merck & Co., Inc., et al.*, CV-05-0425-CG-M (S.D. Ala. Aug. 17, 2005) (granting Merck's motion to stay over objection of plaintiff's counsel); *Jones v. Merck & Co., Inc. et al.*, CV-2:05 -427-RDP (N.D. Ala. Apr. 25, 2005) (same); *King v. Merck & Co., Inc et al.*, CV-2:05-165-T (M.D. Ala. Apr. 26, 2005) (granting Merck's motion to stay with a motion to remand pending); *Wilkes v. Merck & Co., Inc. et al.*, CV-2:05-1241-RRA (granting motion to stay over Plaintiff's objection and finding that MDL court should hear pending motion to remand to keep rulings on similar motions consistent); *Gouge v. Merck & Co., Inc., et al.,* Case No. 3:05CV345/RV (N.D. Fla. Oct. 28, 2005) ("Staying the motion to remand serves the interest of judicial economy and lowers the risk of inconsistent rulings on the sales representatives' potential liability issue by allowing it to be decided by the single court handling all of the federal issues.") (attached as part of collective **Exhibit C**).

For example, the southern district court entered a stay in *Marguerite Woods v. Merck & Co., Inc., et al.*, Civil Action No. 05-0425-CG-M (S.D. Ala.), (**Exhibit D**) despite plaintiff's motion to remand and for expedited hearing on her remand motion.  In finding that a stay was appropriate, that court quoted at length from its prior order in *Faith Beverly, et al. v. Wyeth, et al.*, 03-cv-0866-CB-C (S.D. Ala.), in which it stayed an action where a motion to remand was pending:

> A stay of proceedings in potential MDL cases is appropriate when it promotes judicial economy and efficiency.  When jurisdictional issues are raised that may arise 'in hundreds or even thousands of cases throughout the nation. . . consistency as well as economy [are] . . . served' by having those issues decided by a single court.  Consequently, a stay is proper where the motion to remand raises issues that have been or are likely to be decided by the transferee court.
>
> The jurisdictional issue in this case is whether the individual defendants, who are current or former sales representatives for Wyeth, were fraudulently joined

to defeat federal subject matter jurisdiction. Motions to remand involving similar fraudulent joinder have been addressed numerous times by the transferor court. In fact, one of the transferee court's orders denying remand addressed the alleged fraudulent joinder of a pharmaceutical sales representative in a case removed from Alabama state court.

In the interest of judicial economy and to avoid inconsistent results, the motion to stay is GRANTED. This stay will remain in effect until the Court is notified of the MDL Panel's decision as to whether to transfer this action.

(Order, dated August 17, 2005, Doc. 16 in *Woods v. Merck & Co., Inc., et al.*, Case No. 2:05-cv-00425-CG-M (S.D. Ala.)(internal citations omitted)(quoting Order from *Beverly v. Wyeth, et al.*, 03-cv-0866-CB-C(S.D. Ala.)(**Exhibit D**)).

Such stays are consistent with this Court's practice, that of the other federal district courts in Alabama, federal courts within the Eleventh Circuit and, indeed, throughout the country. For example, Judge Proctor of the Northern District of Alabama, just a few weeks ago addressed this issue in the case of *Faircloth v. Merck & Company, Inc.*, Case No. 2:06-CV-184-RDP (N. D. Ala) (attached as **Exhibit E** to this opposition). In the *Faircloth* case, the Plaintiff requested the court to reverse its prior decision to stay the case pending MDL transfer, in order to permit Plaintiff to conduct discovery to identify the sales representative who marketed and promoted Vioxx to her prescribing physician. Plaintiff stated her intent to amend her Complaint to add that person to the case, predicting that the representative would be an in-state defendant who would destroy diversity.

Judge Proctor in his *Faircloth* memorandum opinion distinguished several diet drug cases where he had ruled on pending motions to remand while they were awaiting transfer to an MDL. Judge Proctor pointed out that the action taken by him the previous year in the diet drug litigation cases was not appropriate now in light of the Eleventh Circuit's opinion in *Legg v. Wyeth*, 428 F. 3d 1317 (11th C. 2005). Judge Proctor said that *Legg* suggests that under

Alabama law, in-state representatives are fraudulently joined if they are merely "conduits" who did not act in bad faith, citing *Legg*, 428 F. 3d at 1324-25. He went on to point out that in *Legg* the Eleventh Circuit had applied Alabama law in the context of claims based on prescription medications and found "no reasonable possibility" that the named sales representatives could be liable to plaintiffs, citing *Legg*, 428 F. 3d at 1324-25. Judge Proctor went on to conclude his comments in footnote two of the *Faircloth* opinion by stating "Post-*Legg*, it is clear that before the issue of fraudulent joinder can be decided, at least some discovery must be conducted to eliminate the depth of a representative's participation in the Plaintiff's allegations. As the court has opined above, these are matters best left to the MDL court." (*Faircloth*, at pg. 2, footnote 2.)

Just as in *Woods*, *Beverly and Faircloth*, deferral is particularly appropriate here because the Vioxx MDL court already has before it numerous cases from Alabama and other jurisdictions in which plaintiffs have named non-diverse professional representatives and seek remand on that basis. *See, e.g., Jones v. Merck & Co., Inc., et al.*, (C.A. No. 05-427, transferred from N.D. Ala.); *King v. Merck & Co., Inc., et al.*, (C.A. No. 05-165, transferred from M.D. Ala.); *Register v. Merck & Co., Inc., et al.* (C.A. No. 04-2259, transferred from N.D. Tex.); *Casimere v. Merck & Co., Inc., et al.* (C.A. No. 05-1042, transferred from E.D. Mo.); *O'Gorman v. Merck & Co., Inc., et al.* (C.A. No. 05-153, transferred from E.D. Mo.); *Bodimer v. Merck & Co., Inc., et al.* (C.A. No. 05-135, transferred from E.D. Mo.); *Allen v. Merck & Co., Inc., et al.* (C.A. No. 05-134, transferred from E.D. Mo.); *Flippin v. Merck & Co., Inc., et al.* (C.A. No. 05-1068, transferred from W.D. Tenn.); *Macklin v. Merck & Co., Inc., et al.* (C.A. No. 05-1054, transferred from W.D. Tenn.); *Wright v. Merck & Co., Inc., et al.* (C.A. No. 05-1160, transferred from W.D. Tenn.); *Dawson v. Merck & Co., Inc.* (C.A. No. 05-1154,

transferred from W.D. Tenn.); *Foster v. Merck & Co., Inc.* (C.A. No. 05-1159, transferred from W.D. Tenn.).

Having the MDL court decide the cross-cutting jurisdictional issues raised by these cases will ensure that the various Vioxx actions around the country are treated in a uniform manner and that this Court does not enter a ruling that might ultimately be inconsistent with that of the MDL court on like motions. *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (where "[t]he jurisdictional issue in question is easily capable of arising in [more than one court] . . . [c]onsistency as well as economy is . . . served [by transferring and consolidating cases as to which remand motions are pending]"). *See also Bd. Of Trs. Of the Teachers' Ret. Sys. of Ill. v. WorldCom, Inc.*, 244 F. Supp. 2d 900, 905 (N.D. Ill. 2002) ("The question, then, is whether other courts are facing or are likely to face similar jurisdictional issues in cases that have been or may be transferred to a multidistrict proceeding."); *Benjamin v. Bayer Corp.,* Civil Action No. 02-0886 Section: "R", 2002 U.S. Dist. LEXIS 9157, at *5 (E.D. La. May 16, 2002) ("because the issues involved in this remand are likely to be common to other transferred cases, the policies of efficiency and consistency of pretrial rulings are furthered by a stay of the proceedings."); *Boudreaux v. Metropolitan Life Ins. Co.*, 1995 U.S. Dist. LEXIS 2656, at * 5 (E.D. La. Feb. 24, 1995) (same).

In short, because Judge Fallon is already facing remand motions in similar cases, Merck respectfully urges the Court to defer consideration of Plaintiffs' motion pending final MDL transfer.

## II.    **The Court Has Diversity Jurisdiction Over Plaintiffs' Claims Because Each Non-Diverse Defendant Has Been Fraudulently Joined.**

Should the Court choose to reach the merits of Plaintiffs' Motion for Remand, the motion should be denied because the Court has diversity jurisdiction over Plaintiffs' claims.

Because Plaintiffs do not dispute in their remand motion that the amount-in-controversy requirement is satisfied, the only jurisdictional question remaining before the Court is whether the non-diverse Employee Defendants are fraudulently joined.  As set forth below, Plaintiffs have no intention of seeking relief from these defendants; nor could they if they so desired. Plaintiffs' Motion for Remand offers nothing to change that fact.  Accordingly, the Employee Defendants must be ignored for purposes of determining jurisdiction.

The fraudulent joinder of employees has become a common tactic in pharmaceutical litigation by plaintiffs who seek to avoid federal court and – in cases like this – inclusion in an MDL proceeding.  This is especially true in Alabama where pharmaceutical cases (regardless of the pharmaceutical) are typically brought against all known sales representatives who happen to have resided in Alabama at one time or another, regardless of whether they have any connection to the actual case.  *See Legg v. Wyeth*, 428 F.3d 1317, 1325, 1320 (11th Cir. 2005) (noting the common strategy of plaintiff in pharmaceutical cases to name local sales representatives to thwart removal).   As the United States Supreme Court has long recognized, however, a defendant's "right to removal cannot be defeated by a fraudulent joinder of a residential defendant . . . ." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).  Thus, Plaintiff cannot name parties of the same citizenship merely to avoid removal of an action to federal court.  *See Pensinger v. State Farm Fire & Cas. Co.*, 347 F. Supp. 2d 1101, 1105 (M.D. Ala. 2003).  The Eleventh Circuit recently reaffirmed this long-standing law in another case where the plaintiff had named sales representatives in an effort to defeat diversity jurisdiction:  "the federal courts should not sanction devices intended to prevent removal to a federal court where one has that right, and should be equally vigilant to protect

the right to proceed to federal court." *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005) (*quoting Wecker v. Nat'l Enameling and Stamping Co.*, 204 U.S. 176, 186 (1907)).

In *Legg*, the Eleventh Circuit confirmed the appropriate standard for determining whether professional representative defendants are fraudulently joined:   A defendant is fraudulently joined when there is "no reasonable possibility" that a state might impose liability on the resident defendant. *Id.* at 1325.  Such a reasonable possibility must be based on facts in evidence and cannot be "merely theoretical." *Id.* at 1325 and n.5. *See also Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *12 (M.D. Ala. Dec. 19, 2005).  Moreover, the *Legg* court recognized, in making this determination, that the Court must consider "the plaintiff's pleadings at the time of removal" – not subsequent claims by the plaintiff in support of a remand motion. *Id.* at 1322 (quoting *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998)).

Here, Plaintiffs' Complaint asserts six causes of action against the Employee Defendants – fraud and fraudulent misrepresentation, negligence, breach of express and implied warranties, strict liability, and loss of consortium.   As set forth below, there is no reasonable likelihood that Plaintiffs will prevail on any of these causes of action against the Employee Defendants.   Accordingly, they are fraudulently joined and there is complete diversity over this action.

## A.    There Is No Reasonable Likelihood That Plaintiffs Will Prevail On Their Fraud Claims Against The Employee Defendants.

The Eleventh Circuit's recent holding in *Legg v. Wyeth* confirms that Plaintiff has no reasonable possibility of prevailing on her fraud claim against the Employee Defendants because Plaintiffs have failed to establish knowledge or bad faith on the part of the Employee Defendants.  But that is not the only reason the fraud claims must fail against the Employee

Defendants.  In addition, these claims must fail under the learned intermediary doctrine, because Plaintiffs do not properly plead reliance, and because Plaintiffs fail to allege fraud with the specificity required by both the Federal Rules of Civil Procedure and Alabama Rules of Civil Procedure.

### 1. Plaintiffs Cannot Assert Fraud Claims Against The Employee Defendants Because They Fail To Establish Knowledge Or Bad Faith On Their Part.

#### a. The *Legg* Case Is On All Fours With The Facts Here.

As the Eleventh Circuit recently explained in *Legg,* Plaintiff cannot assert fraud claims against the employee defendants because they fail to establish knowledge or bad faith on their part.

In *Legg*, Plaintiff Carl and Dorothy Legg asserted numerous claims against Wyeth, a pharmaceutical manufacturer, and several of its professional representatives, including claims for fraud based on allegations that the defendants made misrepresentations and suppressed certain facts related to the Wyeth medicine, Redux.  Wyeth removed the case on diversity grounds, arguing that the Leggs had fraudulently joined a non-diverse professional representative.  Wyeth supported its removal with affidavits from its non-diverse professional representatives, which stated in pertinent part:

> My knowledge of the drugs I detailed was derived exclusively from education provided to me by Wyeth. . . . I had no involvement in the development or preparation of package inserts for any of the drugs, and had no control over content or other written warnings. . . . I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so.  I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Wyeth.

*Legg*, 428 F.3d at 1321.

In response to Wyeth's submission, the Leggs offered as "evidence" voluminous training materials used by Wyeth and its professional representatives in marketing Redux as well as affidavits from several physicians stating the professional representatives had made misrepresentations to them, to contradict the affidavits offered by the defendants. *Id.* at 1322 and n.4. Like the Plaintiff here, the Leggs argued that the training materials established that the professional representatives had knowledge of adverse events associated with the medicine they were marketing and included Wyeth's mandate that such information should not be shared with anyone outside the company, including Plaintiff's physician. (*See* Legg Mtn. for Remand, p. 13, attached as **Exhibit F**).[1]

In addressing the district court's remand of the case in light of all the evidence, the Eleventh Circuit held that "[q]uite simply, there is no reasonable basis to predict that an Alabama court would find [the professional representative], as an individual employee, personally liable for any wrongful action by Wyeth in the absence of evidence that [the individual professional representative defendants] either knew or should have known of Redux's allegedly dangerous effects." *Id.* at 1324-25. The court explained further that when a defendant presents evidence such as declarations that are not disputed by plaintiff, "the court cannot then resolve the facts in the Plaintiff['s] favor based solely on the unsupported

---

1. The Plaintiff in *Legg* offered the following "evidence" that the professional representatives had knowledge: Wyeth provided their sales team with promotional and educational materials regarding Redux to be used in detailing physicians. According to the Plaintiff, the professional representatives went through a Redux sales training program where they were given information regarding the safety and effectiveness of Redux as well as information related to adverse events associated with it. Plaintiff further claimed that the professional representatives learned disingenuous sales strategies to be used in selling Redux, including withholding information from physicians. When Redux was launched, Wyeth knew of risks related to pulmonary hypertension, primary pulmonary hypertension, and the use of diet drugs. This information was passed along to their professional representatives, according to Plaintiff, but they were directed not to reveal this information to anyone outside the company, including prescribing physicians, or they would be at risk for discipline or termination for violating their Employee Confidentiality Agreement. (*See* Legg Mtn. for Remand, pp. 12-13). All of this "evidence" was before the *Legg* court, and the court determined that Plaintiff had not provided any evidence of knowledge allowing them to maintain a cause of action for fraud against the professional representatives. *See Legg*, 428 F.3d at 1324.

allegations in the Plaintiff['s] complaint." *Id.* at 1323. *See also Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *14 (M.D. Ala. Dec. 19, 2005). Thus, the Eleventh Circuit found remand had been improvidently granted, noting that "the Federal courts should not sanction devices intended to prevent a removal to a Federal Court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court." *Id.* at 1325 (quoting *Wecker v. Nat'l Enameling and Stamping Co.,* 204 U.S. 176, 186 (1907)).

The Eleventh Circuit's decision in *Legg* confirms long-standing Alabama law to the effect that "there is no reasonable basis to predict that an Alabama Court would find [the professional representative], as an individual employee, personally liable for any wrongful action by [his company] in the absence of evidence that [he or she] knew or should have known of [the medication's] allegedly dangerous effects." *Id.* at 1324-25; *accord Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 104-05 (Ala. 2002) (discussing elements of fraud claims under Alabama law). *See also Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *4 (M.D. Ala. Dec. 19, 2005)(discussing *Legg*).

For that reason, courts applying Alabama law have held that simply alleging fraud against professional representatives in cases similar to this did not defeat diversity jurisdiction. *See Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *4 (M.D. Ala. Dec. 19, 2005); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 283-84 (S.D.N.Y. 2001). In such instances, the claims have been deemed fraudulent because those allegations did not satisfy an "essential element[] of fraud, most obviously that the sales professionals knew that Rezulin was unsafe at the time they spoke but withheld the truth to mislead Plaintiff." 133 F.Supp.2d at 283 & 284 n.29 (*citing San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Co., Inc.*, 75 F.3d 801, 812-13 (2d Cir. 1996) (to satisfy knowledge

requirement of fraud claim, plaintiff must allege circumstances to show that defendants knew their representations were false when made)).[2]    Thus, as the Rezulin MDL Court held, remand should be denied where, as here, Plaintiffs merely "pepper[] their complaints with allegations of management-level corporate wrongdoing, which they ascribe to salespeople through the use of the catch-all attribution to 'defendants.'"  *Id.* at 283.  *See also Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal").

Here, (as in *Legg* and *Bloodsworth*), the served Employee Defendants have submitted a declaration stating unequivocally that:

> At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Andrew J. Kehoe or Joanne Kehoe.
>
> I am not a physician, and have therefore never prescribed Vioxx.  I am also not a pharmacist and therefore have never written or filled a prescription for Vioxx as a pharmacist.  The information that I used during the course of my employment was provided to me by my employer.   Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx.  I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer.   I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed.  I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.
>
> At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx.  The physicians with whom I dealt and on whom I called in my job were highly skilled professionals.  They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx.  I had no dealings at all at any time with any patients of any of

---

[2] Although these quotations are contained in the section of the opinion dealing with two fraudulent joinder cases from Mississippi, the Court also applies this reasoning to the Alabama cases later in the opinion saying "the Alabama complaint suffers from the same defect as the Mississippi cases joining sales representatives . . . ." *Id.* at 286.

the physicians on whom I called, and had no knowledge or information of any of those patients' medical histories, symptoms, prognoses, or courses of treatment.

At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including but not limited to Andrew J. Kehoe or Joanne Kehoe.

I have never promoted or detailed Vioxx in Russell County, Alabama.

I never participated in, nor was I ever instructed or trained, nor did I ever receive any materials relating to any "Dodgeball program."

I have never met nor spoken with Andrew J. Kehoe or Joanne Kehoe.

I made no knowing misrepresentation concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

I have never made any presentations to the general public regarding Vioxx.

(*See* Declarations of Lamonde Russell and Anne Brandon, attached hereto as **Ex. G** and attached to Merck's Notice of Removal).

In their declarations, the professional representatives go on to state that they have never called on the Plaintiff's prescribing physician, Dr. Dennis Harden:

I understand that the Plaintiff has identified his prescribing physician as Dr. Dennis Harden of 1810 Stadium Drive #240, Phenix City, Alabama ("Dr. Harden"). I have never called on Dr. Harden regarding Vioxx.

*See* Declarations of professional representatives, attached as **Ex, G**).

Like the Plaintiff in *Legg*, the Plaintiffs here have not offered any evidence to dispute the testimony of the Employee Defendants that if they conveyed erroneous information to physicians, they had no knowledge of doing so, and that they never acted in bad faith. To the contrary, like the Plaintiff in *Legg*, the Plaintiffs here have only attached various documents and training materials supporting general allegations against Merck, none of which establish

either the knowledge or bad faith elements of a fraud claim against these Employee Defendants.[3]    In fact, and contrary to Plaintiffs' suggestion, to the extent the Court considers these exhibits as evidence at all, they must be viewed as establishing Merck's very point – the Employee Defendants received all the information they conveyed to physicians from Merck and had no independent knowledge concerning the safety or effectiveness of Vioxx.

Plaintiffs' reliance on these exhibits is misplaced for other reasons as well.  First, Plaintiffs principally argue that the Merck training program entitled "Dodgeball" establishes his fraud claim against the Employee Defendants.  (See Doc. 10, Brief in Support of Mtn. for Remand, pp. 25, 26).  It is uncontested, however, that the Employee Defendants in this case were never trained under the Dodgeball program and never received the Dodgeball materials.  (See Declarations of Russell Lamonde and Anne Brandon).  Second, other training materials attached by Plaintiffs make no mention of Vioxx, much less make any reference to its safety and efficacy.  Thus, none of these materials are relevant to the issue before the Court.

In fact, the facts here are on all fours with *Legg*.  Like the professional representatives in *Legg*:

- The Employee Defendants have made no representations to the Plaintiff or his prescribing physician, Dr. Walter Harden, (s*ee* Declaration of Employee Defendants);

- The Employee Defendants here did not make any knowing misrepresentations to physicians about Vioxx, (*id.*);

- Any information used by the Employee Defendants, in their dealings with physicians about Vioxx came from the employer, (*id.*);

---

[3] Indeed, the Plaintiff in *Legg* offered *more* compelling evidence than the Plaintiff here by submitting affidavits from physicians which stated the professional representatives made false representations to them concerning the safety and effectiveness of the Wyeth medicine which they relied upon in prescribing it.  *See Legg*, 428 F.3d at 1322.

- The Employee Defendants were not even trained on Dodgeball, (*id.*);

- The Employee Defendants did not draft the prescribing information or warnings and had no responsibility to conduct independent research, (*id.*);

- The Employee Defendants had no knowledge related to Vioxx beyond what was given to them by Merck;[4] and

- They acted in good faith at all times with physicians who prescribed Vioxx. (*id.*).

Plaintiffs have failed completely to supply any evidence or even make any specific allegations related to any specific knowledge on the part of any one of the named Employee Defendants, relying instead on general allegations against Merck.  In so doing, Plaintiffs have failed to provide any evidence to dispute any of the above facts, and thus, these facts must be taken as true.

Without competent evidence that the Employee Defendants made knowing misrepresentations to the Plaintiffs' prescribing physicians or acted in bad faith, there is "no reasonable possibility" that an Alabama court would conclude that the professional representatives breached a duty to Plaintiffs.  *See Legg,* 428 F.3d at 1324; (citing *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455 (Ala. 2000)) (stating "those who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith"); *see also Montgomery Rubber and Gasket Co., Inc. v. Belmont Machinery Co., Inc.*, 308 F. Supp. 2d 1293, 1298 (M.D. Ala. 2004) (finding agent defendant was, at most, an innocent conduit and thus, plaintiff could not maintain fraud claim against him when plaintiff did not allege agent "made any representations whatsoever to [plaintiff]" or "had any knowledge of the [alleged

---

[4] Any "evidence" the Plaintiff refer to which is information in the public domain cannot be used to demonstrate knowledge or notice on the part of the Employee Defendants because it would also constitute knowledge or notice to the public as well.

misrepresentation]"); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *4 (M.D. Ala. Dec. 19, 2005).

### b.  Plaintiff's reliance on Wyeth cases is misplaced.

Plaintiffs offer several cases involving Wyeth in the diet-drug litigation in an attempt to minimize the persuasive authority of the MDL courts that have considered the fraudulent joinder of Alabama citizens. (*See* Doc. 10, Brf. in Sup. Mtn. for Remand, pp. 18-20). The majority of the *Wyeth* cases cited by Plaintiff were also cited by the *Legg* plaintiffs in their motion for remand and were not followed by the Eleventh Circuit.  (*See* Legg Mtn. for Remand, pp. 13-15, attached as **Ex. F**).  The *Wyeth* cases should be considered unpersuasive here, just as they were by the Eleventh Circuit in *Legg*.  Further, it is important to note that in at least some of these cases, plaintiff actually submitted affirmative evidence of reliance through affidavits from the prescribing physicians.  *See, e.g., Cash v. Wyeth, et al,* Civil Action No: 03-RRA-3378-E (N.D. Ala.).  These cases are therefore distinguishable from the facts of the present case, where Plaintiff fails to refute either the legal arguments set forth in the Notice of Removal or the declarations filed by the Employee Defendants.

This was precisely the conclusion reached in the *Baycol* MDL when the *Wyeth* opinions were presented to the court.  Judge Davis held that these decisions were distinguishable from the *Baycol* case and did not warrant the remand of cases involving the fraudulent joinder of professional representatives under Alabama law.  (*See In re Baycol Prod. Liab.*, MDL 1431, slip opinion and Plaintiff's motion citing the *Wyeth* cases).

**2.    Plaintiffs' Claims For Fraud Also Fail Because They Fail To Demonstrate Reliance By Plaintiffs' Physicians And Their Claims Are Barred By The Learned Intermediary Doctrine.**

Plaintiffs' fraud claims against the Employee Defendants fail for other reasons as well. First, an essential element of these claims is reliance on the alleged misrepresentation. *See Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 104-105 (Ala. 2002) (fraud); *Ex parte Household Retail Servs.*, 744 So. 2d 871, 879 (Ala. 1999) (suppression). Yet Plaintiffs only summarily alleges that their physicians relied on the Employee Defendants' alleged misrepresentations in prescribing Vioxx to Plaintiff, Andrew Kehoe. It is uncontested, however, that the Employee Defendants, never met nor spoke with the Plaintiffs about Vioxx, nor have they made sales calls to his prescribing physician, Dr. Harden. (*See* Declarations of professional representatives).

Further, Plaintiffs cannot contend their prescribing physicians relied on anything the Employee Defendants allegedly said since Plaintiffs fail/refuse to offer any evidence the Employee Defendants had any contact with those physicians.

Likewise, Plaintiffs fail to allege that Andrew Kehoe's prescribing physicians relayed any misinformation to them or that they were even aware of the alleged statements made to the prescribing physicians. Plaintiffs cite several cases as support for their fraud claim, but none of the cases cited allow a fraud claim in the absence of reliance by the Plaintiffs. *See, e.g., Delta Health Grp., Inc. v. Stafford*, 887 So. 2d 887, 899 (Ala. 2004) (finding plaintiff could not maintain her fraud claim because there was no evidence "[the plaintiff] relied to her detriment on any of the alleged misrepresentations" and stating neither *Thomas v. Halstead*, 605 So. 2d 1181 (Ala. 1992) nor any other authority "excus[es] a plaintiff from the requirement of establishing *his* reliance on the defendants' misrepresentation") (emphasis

added). Without some evidence or specific allegation that Plaintiffs were *aware* of an alleged misrepresentation by these Employee Defendants, these claims must fail for lack of requisite reliance.

Furthermore, even if Plaintiffs could establish a misrepresentation was made to Andrew Kehoe's prescribing physicians, their misrepresentation and suppression claims would still fail as a matter of law.  Andrew Kehoe's physicians in this case are presumably licensed physicians with extensive training, and are capable of making their own independent determinations regarding medication and treatment of their patients.[5]  The recognition that doctors are trained and informed professionals who are in the best position to make decisions about their patients' care is the basis of the learned intermediary doctrine.  *See Stone v. Smith, Kline & French Labs.*, 447 So. 2d 1301, 1304 (Ala. 1984) (observing that the prescribing physician is best suited to evaluate the characteristics of the medication vis-à-vis the needs and background of the patient and concluding that "[p]harmaceutical companies . . . selling prescription drugs are required to warn only the prescribing physician, who acts as a 'learned intermediary' between manufacturer and consumer"); *see also Morguson v. 3M Co.*, 857 So. 2d 796, 801-02, n.1 (Ala. 2003) ("courts rely on the expertise of the physician to 'bridge the gap' in cases where the medical product and its related warnings are too complex to be fully appreciated by the patient," citing *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1314 (11th Cir. 2000)).  The learned intermediary doctrine bars Plaintiffs' claim against the Employee Defendants for any alleged failure to disclose and establishes there is no reasonable likelihood that Plaintiffs can prevail on their claim against these individual

---

[5] It is also reasonable to presume such a physician keeps abreast of the latest FDA reports, pharmaceutical labeling, and medical journal articles as part of his continuing education and practice.  Any articles or reports of this type Plaintiff allege the Employee Defendants concealed would have been public and available to any practicing physician.  As such these items could not have been suppressed.

defendants. *In re Norplant Contraceptive Prods. Liab. Litig.*, 165 F.3d 374, 378 (5th Cir. 1999) (applying learned intermediary doctrine in deceptive trade practices action).

### 3. Plaintiffs' Fraud Claims Against The Employee Defendants Do Not Satisfy The Particularity Requirement Of Rule 9(b).

Finally, there is no reasonable likelihood that Plaintiffs will prevail on their claims of fraud and deceit against the Employee Defendants because they have failed to plead these claims with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and the Alabama Rules of Civil Procedure, both of which call for dismissal if averments of fraud are not stated "with particularity." *See Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1221 (S.D. Ala. 1998) (failure to allege particular facts supporting claims against in-state defendants violated Rule 9(b) and supported finding of fraudulent joinder). Here, Plaintiffs fail to show the "time, place and purported contents of the false representations" allegedly made by each of the Employee Defendants as required by the rule, and also fail to identify the physicians to whom any allegedly fraudulent statements were made. *See Estate of Scott v. Scott*, 907 F. Supp. 1495, 1498 (M.D. Ala. 1995); *see* Ala. R. Civ. P. 9(b) (Committee Comments on 1973 Adoption, subdivision (b)) (plaintiff must show the "time, place and the contents or substance of the false representation, the fact misrepresented, and the identification of what has been obtained"); *see also Legg*, 428 F.3d at 1322 n.4 (stating Plaintiff failed to offer any evidence professional representatives promoted the drug at issue to the prescribing physician and did not even identify the prescribing physician in the complaint). Likewise, Plaintiffs fail to allege with particularity reliance by either Plaintiffs' physicians, another requirement for fraud claims under Alabama law. *See Delta Health Grp., Inc. v. Stafford*, 887 So. 2d 887, 899 (Ala. 2004).

Plaintiffs go to great lengths to describe the marketing campaign for Vioxx, but fail to state how, when, where, and most importantly, *if* Plaintiffs heard of this campaign. Nor do Plaintiffs state when, where, or even *if* Plaintiffs' physicians allegedly received this information or, most importantly, *if* his or her prescribing decisions were affected in any way by this information. Plaintiffs have offered nothing to demonstrate that the Employee Defendants even called on Andrew Kehoe's treating or prescribing physicians. The fact that Plaintiffs' counsel has possession of Merck's marketing materials produced in other Vioxx cases[7] does not link those marketing materials to the prescription of Vioxx written for Plaintiffs. Further, a detailed description of these materials without details regarding if and how they were presented to the prescribing physicians or, more importantly, to Plaintiffs, does not satisfy the requirements of Rule 9(b).[8]

In short, Plaintiffs' Complaint falls far short of the heightened pleading standard for fraud, and as numerous courts have recognized, their Motion for Remand should be denied and Defendant's motion to dismiss should be granted.

## B. Employees Are Not "Sellers" or "Manufacturers" And Thus Cannot Be Held Liable Under the Plaintiffs' Products Liability or Breach of Warranty Claims.

To the extent that Plaintiffs assert products liability claims against the Employee Defendants, there is no reasonable basis to predict that they can prevail on these claims because these claims apply only to "sellers" and "manufacturers," and the Employee Defendants are not "sellers" and "manufacturers" of the prescription medicine Vioxx. *See*

---

[7] The header on the Plaintiff's exhibits suggests that these exhibits were obtained from a Vioxx case pending in the Northern District of Alabama.

[8] "The pleader . . . must use more than generalized or conclusionary statements when setting out the allegations of fraud. The pleader must state the place, the time, the contents of the false misrepresentations, the fact misrepresented, and an identification of what has been obtained." *Lyde v. United Ins. Co. of America*, 628 So. 2d 665, 670 (Ala. Civ. App. 1993) (citing *Robinson v. Allstate Ins. Co.*, 399 So. 2d 288 (Ala. 1981)) (quoted in *Anderson v. Clark*, 775 So. 2d 749, 752 n.5 (Ala. 1999)).

*Ala. Code* § 6-5-501 (1975) (defining "original seller" as "[a]ny person, firm, corporation . . . or other legal or business entity, which in the course of business or as an incident to business, sells or otherwise distributes a manufactured product (a) prior to or (b) at the time the manufactured product is first put to use by any person or business entity who did not acquire the manufactured product for either resale or other distribution in its unused condition or for incorporation as a component part in a manufactured product which is to be sold or otherwise distributed in its unused condition"); *see also Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987) (to state a breach of warranty cause of action, "the plaintiff must prove that the defendant manufactured and/or sold the allegedly defective product").

Here, the Employee Defendants have submitted affirmative proof through their declarations that they are not a "seller" or "manufacturer" for purposes of Alabama law. (*See* Declarations). Therefore, they cannot be held liable under product liability causes of action. *See, e.g., Bloodsworth v. Smith & Nephew*, 2005 WL 3470337 (M.D. Ala. Dec. 19, 2005);[9] *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 286-87 (S.D.N.Y. 2001) ("The sales representative . . . neither manufactured, sold, nor supplied [the drug] . . . [but was] an agent of the manufacturer and seller. In light of the Alabama Supreme Court's clear explanation of AEMLD's scope and purpose, there is no reasonable basis for supposing that it would

---

9 As Judge DeMent stated in the *Bloodsworth* opinion: "Mrs. Bloodsworth's warranty claims against Lanier fail for the same reason that the AEMLD claim fails, as a breach of warranty claim is viable only against the "seller" of the goods. See *Ala. Code* §§ 7-2-313(1), 7-2-314(1) & 7-2-315(1) (2002) (express and implied warranty claims refer to the creation of warranties by the "seller"). Lanier is not considered to be the "seller" of the alleged defective products for purposes of the breach of warranty claims; instead, the manufacturer (i.e., Smith & Nephew) is deemed the seller and Lanier is deemed its "agent." *In re* Baycol Prods. Liab. Litig., M.D.L. No. 1431, [*22] *7 [HN18] (on fraudulent joinder analysis, finding that under Alabama law sales representatives could not be liable for claims of breach of express or implied warranty because they were neither manufacturers nor sellers of Baycol, but rather were merely "agents" of the seller of Baycol); see also *Rutledge*, 733 So. 2d at 417 (holding that builder who hired subcontractor to install door was not the "seller" of door for purposes of establishing a claim for breach of implied warranty of fitness). Similarly, a claim for negligent manufacture or sale is cognizable against the manufacturer or seller, and Lanier again is deemed neither under Alabama law. *See In re* Baycol Products Liability Litigation, M.D.L. No. 1431, *6-*7. Accordingly, the court finds that Mrs. Bloodsworth's breach of warranty and negligence claims against Lanier fail under the fraudulent joinder analysis.

impose liability on the sales representative in this case."); *In re Baycol Prods. Litig.*, MDL-1431 (D. Minn. Mar. 26, 2004) (discussing liability of a professional representative under the AEMLD).

The United States District Court for the District of Minnesota's decision in *In re Baycol Products Litigation*, MDL-1431 (D.C. Minn. Mar. 26, 2004), is particularly instructive. There, in one of the cases considered by the Baycol MDL Court, the plaintiff brought suit in Alabama state court concerning the plaintiff's use of the pharmaceutical Baycol. In addition to the manufacturer (Bayer), the plaintiff also sued several district managers and professional representatives. The cases were removed to federal court on the basis that the non-diverse district managers and professional representatives were fraudulently joined. The plaintiff moved to remand the case, raising the exact same arguments advanced by Plaintiff's counsel here. The district court denied this motion, holding with regard to the AEMLD claim:

> Defendants argue that the district managers and sales professionals are not 'sellers' of Baycol, as contemplated by the AEMLD. The Court agrees. The purpose of the AEMLD, a judicially created doctrine, is to 'plac[e] the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of those products.' *Atkins v. American Motors Corp., et al.*, 3335 So. 2d 134, 139 (Ala. 1976). Although no Alabama state court decision specifically addresses whether a district manager or sales manager could be held liable under the AEMLD, other courts have found that Alabama would not impose such liability. For example, in an unpublished opinion from the Southern District of Alabama, the district court specifically held that a sales manager cannot be held liable under the AEMLD. *Bowman v. Coleman Company, Inc.*, Civil Action No. 96-0448-P-C (S.D. Ala. 1996), Attached as Ex. G to Removal Petition. The court recognized that the defendant sales manager 'had no authority to compel or prevent the distribution of particular products . . . for such product distribution decisions are vested in the [] home office, rather than in its individual store managers.' Id. at *7. The court also noted that it is the corporation that reaps the profits from the distribution from products, and has the participatory market connection with the manufacturer through which the corporation can recoup costs as a result of seller liability, not the sales manager. 'In short, policy goals underlying the AEMLD would not be advanced in any way by holding persons such as Mr. Elkins liable in their role as store managers or sales professionals.'

(**Ex. H**, at pp. 4-5).

Plaintiffs offer no instructive authority to find a products liability claim can survive against the Employee Defendants.  This includes both AEMLD claims and breach of warranty claims.  In short, Alabama case law does not support a products liability claim against the Employee Defendants.  As such, Plaintiffs have no possibility of recovering from the Employee Defendants on either of these claims.

**C.    Plaintiffs' loss of consortium claim is a derivative claim and, thus, does not state a viable claim against the employee defendants.**

Under Alabama law, a loss of consortium claim is a derivative claim that, to be viable, is dependent upon a separate viable claim.  *See*, e.g., *Davis v. Wal-Mart Stores, Inc.,* 64 Fed. Supp. 2nd 1176, 1181 (M. D. Ala. 1999); *Fenley v. Rouselle Corp.*, 531 So.2d 304, 304, n.1 (Ala. 1998) (wife's loss of consortium claim was derivative of her husband's AEMLD claim). As discussed above, Plaintiffs have no viable claims against the employee defendants, thus, there can be no viable loss of consortium claim against such defendants.

## CONCLUSION

For these reasons, as well as those stated in the Notice of Removal and Motion to Stay Proceedings Pending Transfer to Multidistrict Proceeding, Merck respectfully requests that the Court deny Plaintiffs' Motion to Remand, and issue a stay of proceedings that would allow the MDL Court to address said motion.  Alternatively, Plaintiffs' Motion for Remand should be denied.

DATED this 8th day of  June, 2006.

**s/ Alan T. Hargrove, Jr.**

Alan T. Hargrove, Jr.
     Bar Number: (ASB-7018-H46A)
Mike Brock
     Bar Number:  (ASB-5280-B61R)
F. Chadwick Morriss
     Bar Number: (ASB-8504-S75F)

RUSHTON, STAKELY, JOHNSTON
& GARRETT, P.A.
Post Office box 270
Montgomery, Alabama 36101-0270
Telephone:  334/206-3100
Fax:  334/263-4157
E-mail:     ath@rsjg.com
           rcb@rsjg.com
           fcm@rsjg.com


**Attorneys for Defendants**


## CERTIFICATE OF SERVICE


    I hereby certify that on June 8, 2006, I electronically filed the foregoing with the Clerk of the court using CM/ECF system which will send notification of such filing to the following: J. Paul Sizemore and W. Roger Smith, III.


              **s/Alan T. Hargrove, Jr.**
                   COUNSEL